UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHERYL C. HENDRICKSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | No. ED CV 06-822-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 9, 2006, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 25, 2006, and August 28, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 17, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on November 28, 1949. [Administrative Record ("AR") at 52, 101, 432.] She has a high school education [AR at 67, 432], and has no past relevant work experience. [AR at 93.]

On May 21, 2001, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been disabled since December 27, 1984, due to degenerative joint disease of the back and legs, hypertension, fibromyalgia, "post-menopausal," and depression. [AR at 52-54, 57, 60-69.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 30-31, 36-37.] A hearing was held on June 11, 2003, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 17-29.] On July 2, 2003, the ALJ determined that plaintiff was not disabled. [AR at 8-15.] Plaintiff requested review of the hearing decision on July 13, 2003. [AR at 6-7.] The Appeals Council denied plaintiff's request for review on October 10, 2003.[1] [AR at 3-5.]

Plaintiff then filed an action in District Court, Case No. ED CV 03-1284-PLA, challenging the Commissioner's decision. On October 15, 2004, the Court remanded the matter with instructions to reconsider the opinions of plaintiff's treating physicians. [AR at 175-85.] On August 9, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2004 Order. [AR at 186-89.] On February 24, 2006, a second hearing was held, at which time plaintiff appeared with counsel and testified on her own

---

[1] "[W]hile this case was pending before the Appeals Council, [plaintiff] protectively filed a subsequent Title XVI application on August 1, 2003, which was granted by reconsideration disability determination finding on March 5, 2004, that [plaintiff] is limited to performing sedentary work and, therefore, is under a disability as of August 1, 2003[,] based on the Medical-Vocational Rules." As the Appeals Council was unable to locate the file pertaining to the August 1, 2003, application, the ALJ was directed "to obtain the subsequent application and consider the new and material evidence, which had been submitted in connection with the subsequent application and the request for review." [Id.] Based, in part, on the new and material evidence, the favorable determination made on March 5, 2004, with respect to the August 1, 2003, application was reopened by the ALJ and was consolidated with the instant application. [AR at 164.]

1  behalf. [AR at 429-54.] A vocational expert also testified. [AR at 451-53.] On May 25, 2006, the
2  ALJ issued a partially favorable decision finding plaintiff disabled as of December 22, 2005. [AR
3  at 160-73.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/
/

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 166.] At step two, the ALJ concluded that plaintiff has "a very questionable severe musculoskeletal impairment." [Id.] At step

three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 167.] The ALJ found that, prior to December 22, 2005, plaintiff retained the residual functional capacity ("RFC")[2] to perform medium work.[3] [AR at 167.] Specifically, the ALJ concluded that plaintiff "is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently. Out of an 8-hour workday, [plaintiff] is able to stand and/or walk for 6 hours and sit for 6 hours." [AR at 167.] Beginning on December 22, 2005, the ALJ determined that plaintiff retained the RFC to perform light work.[4] Specifically, the ALJ found that plaintiff "is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. Out of an 8-hour workday, she is able to stand and walk for up to 4 hours with frequent rests and she is able to sit for 6 hours. She is able to occasionally climb, stoop, kneel, and crouch, and she has limitations in reaching in all directions above the shoulder level in both arms due to limited range of motion of the shoulder joints. She has no limitation in gross or fine manipulation." [AR at 171.] At step four, the ALJ concluded that plaintiff had no past relevant work. [AR at 172.] At step five, based on the vocational expert's testimony and "direct application" of Medical-Vocational Rules 203.14 and 203.21, the ALJ found that, prior to December 22, 2005, there were a significant number of jobs in the national economy that plaintiff could have performed. [AR at 172-73.] Based on the internal medicine consultative examination dated December 22, 2005, and "direct application" of Medical-Vocational Rule 202.04, the ALJ further found that, as of December 22, 2005, there are not a significant number of jobs in the national economy that plaintiff is capable of performing. [AR at 173.] Accordingly, the ALJ determined that "[plaintiff] was not disabled prior to December 22,

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c). If a plaintiff is able to perform medium work, he or she is also deemed able to perform sedentary and light work. See id.

[4] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

5

2005, but became disabled on that date and has continued to be disabled through the date of this decision." [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to properly consider the musculoskeletal questionnaire that was completed by the treating physician; (2) misrepresented Dr. Quam's opinion regarding plaintiff's need to use a cane for ambulation; and (3) failed to pose a complete hypothetical question to the vocational expert.  Joint Stipulation ("Joint Stip.") at 3.  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability.  Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d),

416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[5] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference.[6] See id.; see also SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[6] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

in the record. Id. at 830-31. "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984)).

Plaintiff argues that the ALJ failed to consider relevant findings in the musculoskeletal questionnaire completed by plaintiff's treating physician, Dr. David Quam. Joint Stip. at 3-5. Specifically, plaintiff asserts that "the ALJ selectively ignored pertinent aspects of Dr. Quam's findings and failed to provide specific and legitimate reasons for doing so." Joint Stip. at 5. Plaintiff contends that "[t]he ALJ's selective consideration of the evidence to support his own conclusions is impermissible." Joint Stip. at 4. As discussed below, the Court agrees with plaintiff.[7]

Dr. Quam treated plaintiff from October 1993 to June 1994. [AR at 235-38, 244-46, 252-54, 289.] On June 10, 1994, Dr. Quam completed a musculoskeletal questionnaire concerning plaintiff's medical condition and resulting limitations. [AR at 253-54.] In the questionnaire, Dr. Quam noted a diagnosis of fibromyalgia with an onset date of 1990. [AR at 253.] In identifying plaintiff's clinical course, Dr. Quam noted "persistent musculoskeletal pains [with] fatigue [and] sleep disturbance" and "[o]ccasional (every 2-4 weeks) flare-ups causing severe debilitating pain

---

[7] As an initial matter, the Court notes defendant's assertion in the Joint Stipulation that the musculoskeletal questionnaire completed by Dr. Quam "was filled out in June 1994, and the application currently under review was dated May 21, 2001." Joint Stip. at 5. However, in the decision, the ALJ did not comment on the fact that Dr. Quam's findings were made prior to the filing of the instant application. Nor did the ALJ reduce the weight that he assigned to Dr. Quam's findings based on the findings being made prior to the filing of the instant application. In fact, the ALJ in the decision gave Dr. Quam's findings in the questionnaire "significant weight." [AR at 168.] Moreover, it is noted that although plaintiff's application was filed on May 21, 2001, plaintiff alleged a disability onset date of December 27, 1984, which predates Dr. Quam's findings. Any *post hoc* attempt by defendant to justify the ALJ's failure to fully consider the findings in the musculoskeletal questionnaire is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); see also Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions).

[and] fatigue." [AR at 253.] Dr. Quam found that plaintiff had paravertebral muscle spasm. [AR at 253.] Dr. Quam further found that plaintiff's sensation, motor function, and reflexes were all normal, and that she had no atrophy, no disorganization of motor function, and no radicular or orthotic pain. [AR at 253.] He indicated that an assistive device was necessary for ambulation, and noted that plaintiff "uses a non-prescribed cane when experiencing flare[-]ups of her disease." [AR at 254.] Dr. Quam also indicated that there was no contracture, ankylosis, subluxation or joint deformity present. [Id.] Dr. Quam noted the results of certain laboratory tests that were performed on November 30, 1993. [AR at 248, 250, 254.] In describing plaintiff's current treatment, response and prognosis, Dr. Quam stated that (1) plaintiff's treatment included antidepressants and muscle relaxants along with spray/stretch techniques; (2) plaintiff's response to treatment varied; and (3) plaintiff still gets flare-ups of her disease. [AR at 254.] Furthermore, on May 28, 1994, in a functional capacities evaluation performed by Dr. Quam, Dr. Quam found that plaintiff could only occasionally bend, squat, and reach above shoulder level, and could never crawl or climb. [AR at 252.] Dr. Quam further found that plaintiff was restricted from activities involving exposure to marked changes in temperature and humidity. [Id.]

In the decision, the ALJ offered the following discussion of Dr. Quam's findings:

> Moreover, in a functional capacities evaluation completed on May 28, 1994, Dr. Quam do [sic] not support any disabling condition and noted only functional limitations for occasional bending, squatting, and reaching above shoulder level with no crawling, climbing, or exposure to marked changes in temperature or humidity. Dr. Quam asserted that the claimant's cane was not prescribed, which is contrary to the assertions of Dr. Salary. Dr. Quam also completed a musculoskeletal questionnaire on June 10, 1994, indicating essentially normal examination findings with the exception of some muscle spasms with no radicular or orthotic pain. Motor function, reflexes, and sensation were normal with no evidence of atrophy and no noted loss of grip strength. Gait and station were normal. I find the assertions of Dr. Quam are consistent with the medical evidence available at that time and his assertions are given significant weight.

[AR at 167-68 (citations omitted).]

/

/

/

Although the ALJ in the decision gave "significant weight" to some of Dr. Quam's findings, the ALJ's failure to specifically address other findings of Dr. Quam and to provide specific and legitimate reasons for ignoring those findings in his determination of plaintiff's RFC was error. The RFC assessment must be made "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545, 416.945. Examples of the types of evidence required to be considered in making an RFC assessment include medical history, medical signs, laboratory findings, recorded observations, and medical source statements. See SSR 96-8p. The RFC assessment must always consider and address medical source opinions, and if the assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.[8] See SSR 96-8p; see also Thompson v. Barnhart, 2006 WL 709795, at *13 (E.D. Pa. March 15, 2006) ("'Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.'") (quoting Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981)).

In determining plaintiff's RFC, the ALJ failed to discuss certain of Dr. Quam's findings in the musculoskeletal questionnaire, including: (1) Dr. Quam's notation that plaintiff was diagnosed with fibromyalgia in 1990; (2) Dr. Quam's description of plaintiff's musculoskeletal clinical course as persistent musculoskeletal pains with fatigue and sleep disturbance, as well as occasional flare-ups that cause severe debilitating pain and fatigue; (3) Dr. Quam's conclusion that plaintiff needed an assistive device for ambulation and that plaintiff used a non-prescribed cane when she experienced flare-ups of her disease[9]; and (4) Dr. Quam's assertions that plaintiff was currently

---

[8] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

[9] The ALJ did not completely consider Dr. Quam's finding with respect to plaintiff's need for an assistive device for ambulation by stating that "Dr. Quam asserted that [plaintiff's] cane was not prescribed." [AR at 167.] Notably, Dr. Quam indicated that an assistive device was *necessary* for ambulation. [AR at 254 (emphasis added).] In the Joint Stipulation, plaintiff asserts that the ALJ misrepresented the record with respect to Dr. Quam's opinion regarding plaintiff's need to use

treated with antidepressants and muscle relaxants along with spray/stretch techniques, had variable responses to treatment, and still suffered from flare-ups of her disease. [AR at 253-54.] Further, the ALJ in the RFC assessment failed to include the limitations/restrictions found by Dr. Quam in the functional capacities evaluation,[10] and did not provide any explanation for his failure to do so.[11] [AR at 167, 252.] The ALJ cannot selectively rely on only those portions of the treatment record that support his ultimate conclusion. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)); see also Gallant, 753 F.2d at 1456 (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion); Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"). Given that the ALJ assigned "significant weight" to the findings of Dr. Quam and the

---

a cane for ambulation. Joint Stip. at 9. In light of the remand Order, however, the Court herein need not further address plaintiff's claim concerning the ALJ's misrepresentation.

[10] Dr. Quam found that plaintiff could only occasionally bend, squat, and reach above shoulder level, could never crawl or climb, and was restricted from activities involving exposure to marked changes in temperature and humidity. [AR at 252.]

[11] Although the ALJ adopted the opinion of the internal medicine consultative examiner, Dr. Bahaa Girgis, as plaintiff's residual functional capacity [AR at 167-68], the ALJ's acceptance of Dr. Girgis' opinion is insufficient by itself to reject the findings of the treating physician. Even assuming that the ALJ implicitly rejected certain of Dr. Quam's findings by only giving "significant weight" to some of Dr. Quam's findings, he did not provide any legally sufficient reasons for such rejection. See Lester, 81 F.3d at 830 (the ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion); see also 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p.

record as a whole supports Dr. Quam's findings,[12] the ALJ erred by failing to properly consider, or to provide sufficient reasons for rejecting, Dr. Quam's findings in determining plaintiff's RFC. For the foregoing reasons, remand is warranted.[13]

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider Dr. Quam's findings. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: November 6, 2008

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[12]  Not only do Dr. Quam's treatment records and the other medical evidence in the record lend support to Dr. Quam's findings regarding plaintiff's functional limitations [AR at 235-38, 242, 244-46, 289, 398, 400, 406], Dr. Quam's opinion is also supported by Dr. Robert Moore's finding in the neurological and limited psychiatric evaluation of plaintiff on June 27, 1995, that "[b]ecause of her low back complaints and fibromyalgia, [plaintiff] could occasionally, but not frequently or continuously stoop or bend" [AR at 342], as well as a State Agency physician's Residual Physical Functional Capacity Assessment dated July 12, 1995, in which the following postural limitations were noted: plaintiff can climb (ramp/stairs), stoop, kneel, crouch, and crawl only on an occasional basis and can never climb (ladder/rope/scaffolds) or balance. [AR at 347.]

[13]  As the ALJ's consideration on remand of Dr. Quam's findings may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order.